IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLENSHEAD, ET AL., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 18-3102 |
| | : | |
| NEW PENN FINANCIAL, LLC, ET AL., | : | |
| | : | |
| Defendants. | : | |

Goldberg, J.                                          March 18, 2020

## MEMORANDUM

Plaintiffs William Hollenshead ("Hollenshead") and Patricia Mirkin-Hollenshead ("Mirkin-Hollenshead"), husband and wife (collectively, "Plaintiffs"), bring this case alleging that the improper servicing of their home loan has resulted in threats of foreclosure proceedings and wrongful accounting of their loan. They have sued NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), Bank of America, N.A. ("BOA"), and Ocwen Loan Servicing, LLC ("Ocwen") under the Real Estate Procedures Settlement Act, 12 U.S.C. § 2605(f)(1), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq., and for breach of contract and unjust enrichment.

Defendant Ocwen has filed the current Motion seeking dismissal of all claims against it. For the following reasons, I will grant the Motion in part and deny it in part.

**I.  FACTS IN THE SECOND AMENDED COMPLAINT**

The following facts are taken from Plaintiff's Second Amended Complaint:[1]

---
[1]  In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to

Plaintiffs owned a property located at 3098 Merlin Road in Chester Springs, Pennsylvania. In November 2012, Plaintiff Hollenshead entered into a loan modification to resolve an earlier foreclosure action brought by Defendant BOA. Paragraph 3A of the Loan Modification Agreement stated that all existing arrears related to the mortgage loan for the property were capitalized into the loan principal, even to the extent that such arrears included "unpaid" amounts. During that settlement, Defendant Ocwen acted as an agent of BOA. (Sec. Am. Compl. ¶¶ 7–9.)

In June 2014, Hollenshead was threatened with a county tax sale due to a $7,752.22 county property tax bill from 2012 that Defendant Ocwen—the loan servicer—had allegedly failed to capitalize into the loan modification principal. Ocwen paid the tax bill and then assessed the paid tax to Plaintiffs' loan account. (Id. ¶¶ 10–11.)

In January 2016, servicing of the loan transferred from Defendant Ocwen to Defendant Shellpoint. In the course of transferring service, Shellpoint reimbursed Ocwen for advances under the standard terms of loan and lender/servicer servicing contracts. As such, upon assuming the loan's servicing, Shellpoint compensated Ocwen's advance outlay for the unpaid 2012 tax arrears. (Id. ¶¶ 12–13.)

In June 2016, Plaintiff fell into arrears due to Defendants BOA and Shellpoint's increase of the monthly escrow component of the mortgage loan payment to cover the 2012 property tax bill. In August 2016, Plaintiff Mirkin-Hollenshead called Shellpoint regarding the increased monthly payments. Shellpoint told Mirkin-Hollenshead that it would send Plaintiffs a payment plan for the alleged arrears. As of August 2016, Plaintiffs were only one month in arrears. (Id. ¶¶ 14, 17–19.)

---

the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

On September 1, 2016, Shellpoint sent Plaintiffs an Act 91 pre-foreclosure Notice demanding payment of alleged arrears of $13,668, including a lump sum of late charges in the amount of $2,780.44. Plaintiffs allege that, at that time, they were actually in arrears on principal and interest in the amount of approximately $2,200. The repayment agreement letter sent by Shellpoint, however, demanded payment of the arrears through a down payment of $3,872 and three equal installments of $8,428—an amount over double the regular monthly payments of principal, interest, and escrow payments. (Id. ¶¶ 20–22.)

Plaintiffs allege that, due to the unpaid 2012 property tax bill shortage, Shellpoint committed two errors relating to the servicing of the mortgage loan. First, Shellpoint charged an incorrect amount of monthly escrow on Plaintiffs' account to cover the unpaid 2012 taxes. Second, Shellpoint automatically assessed roughly $2,000 in property inspection fees from September 2013 through 2017, despite the fact that it had no basis to believe the property was vacant and/or not in good condition. (Id. ¶ 23.)

On June 7, 2017, Plaintiffs sent Shellpoint a combined Request for Information and Notice of Error ("RFI/NOE") letter under RESPA requesting correction of the loan's accounting. In a June 25, 2017 response, Shellpoint stated that it did not have any records of a delinquent tax payment for 2012. Yet, Shellpoint's own "pay history" showed the 2012 school tax payment. (Id. ¶¶ 24–25.)

Shellpoint went on to state:

> As detailed within the Escrow Analysis from October 26, 2017, an escrow shortage of $430.90 was calculated due to an increased hazard insurance premium. Once spread over 12 months, the monthly shortage payment was $35.91. Meanwhile at that time, Shellpoint anticipated paying a total of $11,373.96 for the upcoming year's bills (*comprised of the Hazard Insurance of $3,306.00, School Tax of $6474.57, Town Tax of $233.46 and County Tax of $1,359.98*). Once spread over 12 months, the

> monthly bill payment was $947.83. Accordingly, the monthly escrow payment was $983.74. Along with the monthly principal & interest payment of $2,480.60, the total monthly payment was **$3,464.34, effective December 1, 2017.**

(Id. ¶ 27 (emphasis in original).) Plaintiffs allege that this response ignored the disputed period and failed to recognize that any escrow re-analysis for the later period was wrongly premised on, among other accounting errors, a double payment of taxes from 2014. (Id.)

Plaintiffs brought this action on July 23, 2018. On July 16, 2019, Plaintiffs filed a Second Amended Complaint against Defendants Shellpoint, BOA, and Ocwen Loan Servicing, alleging (1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (2) breach of contract; (3) unjust enrichment; and (4) violation of RESPA (only as to Defendant Shellpoint).

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

Defendant Ocwen moves to dismiss the UTPCPL claim, the breach of contract claim, and the unjust enrichment claim. I address each individually.

### A. UTPCPL Claim

Plaintiffs' UTPCPL claim alleges that Defendants' September 1, 2016 Act 91 Notice failed to adhere to the requirements set forth in the statute.[2] Specifically, Plaintiffs assert that the Act 91 Notice failed to itemize the $2,780.44 in late charges and the tax arrears at issue. Moreover, Plaintiffs allege that Defendants failed to state material facts or otherwise misrepresented the true facts regarding the loan, causing Plaintiffs to overpay loan amounts. Plaintiffs go on to contend that the conduct by Defendants constituted unfair or deceptive acts and practices under the UTPCPL.

---

[2] Under 41 P.S. § 403, "[b]efore any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section." Id.

Ocwen posits that the UTPCPL claim must be dismissed because (a) it is barred by the economic loss doctrine, and (b) Plaintiffs fail to adequately plead a UTPCPL claim.

      1.     <u>Economic Loss Doctrine</u>

Pennsylvania's economic loss doctrine bars a plaintiff from recovering tort damages for economic losses stemming solely from breach of contract. <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 671 (3d Cir. 2002). More specifically, it prohibits claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." <u>McGuckin v. Allstate Fire & Cas. Ins. Co.</u>, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (internal quotations omitted).

In <u>Werwinski v. Ford Motor Co.</u>, the United States Court of Appeals for the Third Circuit considered whether UTPCPL claims sounding in contract were barred by the state law doctrine of economic loss. 286 F.3d at 679–81. Finding "that the federal and state decisions interpreting Pennsylvania law shed little light on the question at issue," the Third Circuit turned to courts outside of Pennsylvania for persuasive authority. <u>Id.</u> at 676. Ultimately, the Third Circuit predicted that the Pennsylvania Supreme Court would find that the economic loss doctrine applied to claims under the UTPCPL. <u>Id.</u> at 681 (quoting <u>Aloe Coal Co. v. Clark Equip. Co.</u>, 816 F.2d 110, 119 (3d Cir. 1987)).

Although the Pennsylvania Supreme Court has yet to address this issue, the Pennsylvania Superior Court, subsequent to <u>Werwinski</u>, has twice reached the opposite conclusion and held that the economic loss doctrine is inapplicable to UTPCPL claims. See <u>Dixon v. Nw. Mut.</u>, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) (declining to find UTPCL claims barred by the economic

loss doctrine; see also Knight v. Springfield Hyundai, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) ("The claims at issue in this case are statutory claims brought pursuant to the UTPCPL and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to [plaintiff's] UTPCPL claims.").

In light of these conflicting pronouncements of Pennsylvania law, I must now decide whether to adhere to Werwinski or to follow the holdings of the subsequent opinions issued by the Pennsylvania Superior Court. In doing so, I remain cognizant of the well-settled principle that district courts are bound by the Third Circuit's previous holdings "in the absence of a *clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law." Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1343 (3d Cir. 1990) (emphasis in original). Thus, the question before me is whether Knight and Dixon constitute "persuasive evidence of a change in Pennsylvania law" such that adherence to Werwinski is no longer necessary.

Numerous district court opinions have concluded that district courts remain bound by Third Circuit decisions unless either the Third Circuit or the Pennsylvania Supreme Court rules otherwise. See, e.g., Bordoni v. Chase Home Finance LLC, 374 F. Supp. 3d 378, 385–86 (E.D. Pa. 2019); McDonough v. State Farm Fire & Cas. Co., 365 F. Supp. 3d 552, 560 (E.D. Pa. 2019) (citing Powel v. Saint Joseph's Univ., No. 17-4438, 2018 WL 994478, at *10 (E.D. Pa. Feb. 16, 2018); Yamarick v. UNUM Grp., No. 16-6164, 2017 WL 3008751, at *3–4 (E.D. Pa. July 14, 2017); Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016); McGuckin v. Allstate Fire & Cas. Ins. Co., 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015); Vaughan v. State Farm Fire & Cs. Co., No. 14-1684, 2014 WL 6865896, at *5 (E.D. Pa. Dec. 3, 2014); Pesotine v. Liberty Mut. Grp., Inc., No. 14-784, 2014 WL 4215535, at *4 (M.D. Pa. Aug. 25, 2014); Gadley

v. Ellis, 13-17, 2014 WL 3696209, at *4–5 (W.D. Pa. July 23, 2014), vacated in part on other grounds, 2014 WL 2345619 (W.D. Pa. May 15, 2015); Tubman v. USAA Cas. Ins. Co., 943 F. Supp. 2d 525, 531 (E.D. Pa. 2013); Wulf v. Bank of Am., N.A., 798 F. Supp. 2d 586, 596–97 (E.D. Pa. 2011)).

In Bordoni v. Chase Home Finance, the district court summarized the three primary reasons underlying the line of decisions that adhere to Werwinski. First, it found that the Pennsylvania Supreme Court has applied the economic loss doctrine to bar a private cause of action under other statutes similar to the UTPCPL. Bordoni, 374 F. Supp. 3d at 386 (citing Powell v. Saint Joseph's Univ., No. 17-4438, 2018 WL 994478, at *9 (E.D. Pa. Feb. 20, 2018)). Second, the court recognized that the Pennsylvania Superior Court decision in Knight was inconsistent in its characterization of the UTPCPL because although it held that UTPCPL claims were barred by the gist of the action doctrine, it concluded that UTPCPL claims were "statutory claims . . . and do not sound in negligence." Id. (quoting Knight, 81 A.3d at 952). Finally, the Bordoni court noted that, according to a recent Pennsylvania Supreme Court ruling, the applicability of the economic loss doctrine turns on whether the duty at issue "arises independently of any contractual duties between the parties." Id. The decision in Knight "did not analyze the UTPCPL in terms of the source of the parties' duties, whereas Werwinski did." Id. at 1054 (citing Powell, 2018 WL 994478, at *10).

Notwithstanding this reasoning, a line of contrary district court decisions has declined to follow Werwinski and has, instead, concluded that the economic loss doctrine does not bar UTPCPL claims. See McDonough, 365 F. Supp. 3d at 560 (citing Kerr v. State Farm Mut. Auto. Ins. Co., No. 18-309, 2018 WL 5809989, at *4–5 (W.D. Pa. Nov. 6, 2018); Lovelace v. Nationwide Mut. Ins. Co., No. 18-2701, 2018 WL 3818911, at *3–4 (E.D. Pa. Aug. 10, 2018);

8

Pansini v. Trane, No. 17-3948, 2018 WL 1172461, at *5–6 (E.D. Pa. Mar. 6, 2018); Busch v. Domb, No. 17-2012, 2017 WL 6525779, at *3–4 (E.D. Pa. Dec. 20, 2017); Landau v. Viridian Energy PA LLC, 223 F. Supp. 3d 401, 415 (E.D. Pa. 2016); Sosso v. ESB Bank, No. 16-367, 2016 WL 3855031, at *7 (W.D. Pa. July 15, 2016); Roberts v. NVR, Inc., No. 15-489, 2015 WL 3745178, at *6–7 (W.D. Pa. June 15, 2015)).

This line of cases has generally relied on the principle that when a district court is applying state law and "there is persuasive evidence that it has undergone a change, [the district court is] not bound by [the] previous panel decision if it reflected on state law prior to its modification." Kerr, 2018 WL 5809989, at *4 (quoting Robinson v. Jiffy Exec. Limousine, 4 F.3d 237, 240 (3d Cir. 1993)). Thus, "although state intermediate appellate decisions are not automatically controlling where the highest court of the state has not spoken," federal courts "must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law." Robinson, 4 F.3d at 242; see also Werwinski, 286 F.3d at 670 ("In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." (quotation omitted)).

In Lovelace v. Nationwide Mut. Ins. Co., supra, the district court cited this principle to find that the economic loss doctrine does not bar UTPCPL claims. 2018 WL 2818911, at *3. Declining to follow Werwinski, the court explained:

> At the time *Werwinski* was decided, the Third Circuit was predicting without guidance from Pennsylvania courts. Now, the Pennsylvania Superior Court has spoken clearly on the issue. While it would be ideal for the Third Circuit or Pennsylvania Supreme Court to weigh in on the current state of the law, waiting for that day is not the better course of action. Currently, a litigant in state court in Pennsylvania can bring a UTPCPL claim while a litigant in federal court with an identical claim may—or may not—

9

> be barred from bringing that claim, even though the federal court must apply current Pennsylvania law to this question of state law. Such inconsistent outcomes encourage forum shopping, an unwelcome result.

Id. at *3. Ultimately, the district court concluded that the clear pronouncements by the Pennsylvania Superior Court in Knight and Dixon constitute the clear change in the law that "has proved incorrect the Third Circuit's prediction in Werwinski." Id. at *4.

I am persuaded by the logic expressed in Lovelace for several reasons. As a primary matter, the Werwinski court did not have the benefit of any Pennsylvania cases addressing application of the economic loss doctrine to the UTPCPL, but rather made a prediction about what the Pennsylvania Supreme Court would do in such a situation. "Blind adherence to predictive precedent is . . . problematic because of the difficulty inherent in the task of prediction." Landau v. Viridian Energy PA, LLC, 223 F. Supp. 3d 401, 415 (E.D. Pa. 2016). In light of the recent guidance from Pennsylvania's appellate court, such prediction is no longer necessary.

Second, as noted by the Third Circuit, "[t]he rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996). No such persuasive indication exists here.

Finally, as the Pennsylvania Superior Court explained in Dixon, continued adherence to the predictions made in Werwinski will result in disparate results between state and federal courts. For example, if a suit is filed in state court, the Pennsylvania trial court will be bound by the Superior Court precedent in Knight and Dixon. If, however, that same suit is removed to federal court, then the Third Circuit's holding in Werwinski will dictate a completely different outcome. This "split in authority means that state and federal courts in this Commonwealth

10

follow different substantive rules in considering claims advanced under the UTPCPL." Dixon, 146 A.3d at 790 n.12. In turn, litigants will be encouraged to forum shop in order pursue a more favorable result.

For these reasons, I am persuaded that I should follow the Knight and Dixon decisions. Accordingly, I find that the UTPCPL claims here do not sound in negligence and, thus, the economic loss doctrine does not operate to bar these claims.

2. Pleading of a UTPCPL Claim

Alternatively, Defendant Ocwen argues that the UTPCPL claim fails because a breach of contract cannot, in and of itself, support a UTPCPL claim. Rather, Ocwen asserts that a UTPCPL claim based on an alleged breach of contract must also allege malfeasance—*i.e.*, intentional and wrongful conduct in performing a contractual obligation—in order to withstand dismissal. Ocwen concludes that because Plaintiffs only allege the failure to perform a contractual duty absent accompanying malfeasance, the UTPCPL claim fails to state a plausible claim for relief.

The UTPCPL provides, in pertinent part, that "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce as defined by . . . this act . . . are hereby declared unlawful." 73 Pa. Stat. Ann. § 201-3. The UTPCPL thus provides a private cause of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" due to the seller's unfair or deceptive acts or practices. 73 Pa. Stat. Ann. § 201-9.2(a). "In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL]." Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995).

Here, Plaintiffs allege that Defendant Ocwen neglected to capitalize the 2012 tax arrears into the principal, thus breaching the Loan Modification Agreement. They goes on to state that Ocwen actively misrepresented the 2012 tax arrears as an amount owed by Plaintiff outside of the Loan Modification Agreement. Specifically, the Second Amended Complaint states, in pertinent part:

> 41. Defendants, through authorized agents and employees, failed to state material facts or otherwise misstated, misrepresented, or omitted the true facts concerning or related to the status of the Loan in the Act Notice that tended to deceive and/or did in fact deceive plaintiff that the late charges and other amounts demanded therein were owed by plaintiff.
>
> 42. Defendants, through authorized agents and employees, failed to state material facts or otherwise misstated, misrepresented, or omitted the true facts concerning or related to the status of the Loan in its excessive repayment agreement demands, both in the Act 91 and otherwise as described herein, causing plaintiff to overpay the loan amounts due by more than $10,000, including but not limited to *Ocwen misrepresenting the paid 2012 tax arrears as owed by assessing it to plaintiff's loan account* and Shellpoint continuing to wrongfully collect said arrears amount as an unspecified lump sum in the Act 91 notice and in its repayment agreements.

(Sec. Am. Compl. ¶¶ 41–42 (emphasis added).) Plaintiffs assert that Defendants' representations—including those by Ocwen—were "made with the intent to deceive or defraud the plaintiffs into selling their home in lieu of accurately and lawfully accounting for plaintiffs' payments under the Note and Mortgage." (Id. ¶ 45.)

Taking these allegations as true—as I must at the motion to dismiss stage—I find that Plaintiff has plausibly pled malfeasance in the course of performing a contractual duty. Accordingly, I decline to dismiss the UTPCPL claim.

B. **Breach of Contract Claim**

Defendant Ocwen next seeks dismissal of Plaintiffs' breach of contract claim on the ground that, even accepting Plaintiffs' allegations as true, no breach occurred.[3] The Second Amended Complaint alleges that the Loan Modification Agreement required Ocwen, in late 2012, to add to Plaintiffs' outstanding principal a payment of unpaid taxes that Ocwen did not make until June 2014. Ocwen notes, however, that the Loan Modification Agreement only required that certain sums—those that *had already been paid* on Plaintiffs' behalf as of the modification effective date—be capitalized into the unpaid principal balance. It argues that interpreting the contract to require Ocwen to have capitalized amounts it later paid to avoid imposition of a lien on Plaintiffs' property, when it had no way of knowing these sums were owed prior to entering into the Loan Modification Agreement, results in an illogical and unreasonable reading of the contract.

Ocwen's argument mischaracterizes the Loan Modification Agreement. The Second Amended Complaint states that Plaintiffs had a delinquent 2012 property tax bill at the time of the November 2012 Loan Modification Agreement. (Sec. Am. Compl. ¶¶ 8, 25.) Paragraph 3A of the Loan Modification Agreement provided that:

> As part of this Modification, I agree that all amounts and arrearages *that are or will be past due as of the Modification Effective Date*, including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges . . . less any amounts paid to Lender but not previously credited to my Loan, will be added to the current principal balance of the Note.

---

[3] See MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 590 (W.D. Pa. 2019) (noting that, in Pennsylvania, to recover for a breach of contract, a plaintiff must show "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages.") (quoting Corestates Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

13

(Id., Ex. A ¶ 3A (emphasis added).) According to the Second Amended Complaint, Ocwen—in violation of this contractual provision—failed to add the outstanding 2012 tax bill to the principal, a fact unknown to Plaintiffs until June 2014, when they were threatened with a county tax sale. (Id. ¶¶ 10, 50.) The mere fact that Ocwen did not actually pay the tax bill until after the effective date of the Loan Modification Agreement is irrelevant, as the Agreement required capitalization of all amounts "past due as of the Modification Effective Date."[4]

Taking the allegations of the Second Amended Complaint as true, I find that Plaintiffs have adequately pled a plausible claim for breach of contract. Accordingly, I deny Ocwen's Motion on this issue.

### C. Unjust Enrichment Claim

Finally, Ocwen contends that Plaintiffs' unjust enrichment claim should be dismissed on two grounds. First, it asserts that an unjust enrichment claim is not viable where, as here, the relationship between the parties is based on a written contract. Second, it urges that Plaintiffs have failed to allege that they have conferred any benefit on Ocwen, as is required for an unjust enrichment claim. As I find that the first argument has merit, I focus solely on that issue.

The elements necessary to prove unjust enrichment are:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value . . . The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

---

[4] Ocwen's argument that it "had no way of knowing these sums were owed prior to entering into the Loan Modification Agreement" is untenable. (Ocwen's Mem. Supp. Mot. to Dismiss 7–8.) According to the Second Amended Complaint, the sums owed were public record county property taxes which were owed as of the time of the Loan Modification Agreement.

Durst v. Milroy Gen Contracting, Inc., 52 A.3d 357, 360 (Pa. Super. Ct. 2012) (quoting Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).

In Pennsylvania, the unjust enrichment doctrine is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." Benefit Tr. Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)); see also Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360–61 (E.D. Pa. 2013) (noting that Pennsylvania law precludes a claim for unjust enrichment where the relationship between the parties is based on a written contract). "Courts typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim *only* where there is some dispute as to whether a valid, enforceable written contract exists." Montanez v. HSBC Mortg. Corp. (USA), 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012) (emphasis added); see also Cosby v. Am. Media, Inc., 197 F. Supp. 3d 735, 745 (E.D. Pa. 2016) (holding that if the enforceability of the contract between the parties is disputed, an unjust enrichment claim may survive a motion to dismiss). Where there is no dispute as to the validity and enforceability of a contract between the parties, a plaintiff may not assert an unjust enrichment claim. Montanez, 876 F. Supp. 2d at 516; see also Fish Net, Inc. v. ProfitCenter Software, Inc., No. 09-5466, 2011 WL 1235204, at *10 (E.D. Pa. Mar. 31, 2011) (dismissing an unjust enrichment claim because "[n]either party claims that the contract was either invalid or unenforceable").

Here, it is uncontested that Plaintiff and Ocwen entered into a written Loan Modification Agreement which governs the issues in dispute here. Neither party claims that the contract was either invalid or unenforceable. Because an adequate remedy at law exists, Plaintiffs may not

alternatively plead a claim for unjust enrichment against Ocwen. Accordingly, I will dismiss this claim as against Defendant Ocwen.

## IV. CONCLUSION

In light of the foregoing, I will grant Defendant Ocwen's Motion to Dismiss the unjust enrichment claim (Count IV), but will deny the Motion on all other grounds.